915 A.2d 1081 (2007)
390 N.J. Super. 456
STATE of New Jersey, Plaintiff-Respondent,
v.
Robert C. RENSHAW, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 2006.
Decided February 9, 2007.
*1082 Kevin M. Leckerman argued the cause for appellant (Levow & Costello attorneys; Evan M. Levow, Cherry Hill, on the brief.).
Paul D. Colangelo, Senior Assistant Prosecutor, argued the cause for respondent (Sean F. Dalton, Gloucester County Prosecutor, attorney; Mr. Colangelo, on the brief.).
Before Judges CUFF,[1] WINKELSTEIN and BAXTER.
The opinion of the court was delivered by
BAXTER, J.S.C. (temporarily assigned).
Defendant Robert Renshaw appeals from a conviction for driving while intoxicated, in violation of N.J.S.A. 39:4-50.
After being found guilty in the municipal court of Franklin Township, defendant appealed to the Law Division, where a trial de novo again resulted in his conviction.[2] With the exception of vacating the thirty-day county jail sentence that had been imposed in the municipal court for driving while intoxicated, the sentence in the Law Division was identical to the sentence imposed in Franklin Township.[3] Appropriate fines and penalties were also assessed. All of defendant's penalties, with the exception of the license suspension, have been stayed pending appeal.
On appeal, defendant argues:
I. THE BLOOD RESULTS WERE OBTAINED IN VIOLATION OF APPELLANT'S RIGHT AGAINST UNLAWFUL SEARCHES AND SEIZURES: ODOR OF ALCOHOL AND THE HAPPENING OF AN ACCIDENT, WITHOUT MORE, DO NOT ESTABLISH PROBABLE CAUSE TO SEIZE BLOOD WITHOUT A WARRANT.
II. A BLOOD SAMPLE WAS TAKEN FROM RENSHAW WITHOUT CONSENT AND AGAINST HIS *1083 WILL: FAILURE TO OBTAIN A WARRANT TO OBTAIN THE BLOOD UNDER THE CIRCUMSTANCES MUST CAUSE SUPPRESSION OF THE BLOOD TEST RESULTS.
III. ADMISSION OF THE "UNIFORM CERTIFICATION FOR BODILY SPECIMENS TAKEN IN A MEDICALLY ACCEPTABLE MANNER" VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES AS DEFINED BY CRAWFORD v. WASHINGTON.

IV. THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO ADMIT INTO EVIDENCE THE BLOOD ALCOHOL RESULTS WITHOUT PROVIDING A PROPER FOUNDATION TO SHOW HOW THE HEAD SPACE GAS CHROMATOGRAPHY INSTRUMENT ARRIVED AT ITS RESULTS.
V. THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE TESTED BLOOD SAMPLE WAS NOT CONTAMINATED AND THAT THE BLOOD ALCOHOL RESULT WAS RELIABLE.
VI. WITHOUT THE ADMISSION OF THE BLOOD ALCOHOL CONCENTRATION RESULTS, THE STATE HAS FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT MR. RENSHAW WAS INTOXICATED.
With the exception of Point III, each claim lacks merit. As to Point III, we conclude that the hearsay admission of the "Uniform Certification for Bodily Specimens Taken in a Medically Acceptable Manner," (certification) without providing defendant with the opportunity to cross-examine the nurse who drew his blood, pursuant to N.J.S.A. 2A:62A-11, violated defendant's right to confront witnesses under the Sixth Amendment of the United States Constitution and article I, paragraph 10 of the New Jersey Constitution. We reverse.

I.
At approximately 2:17 a.m. on August 19, 2004, Officer Gordon Muller of the Franklin Township Police Department came upon a Ford Explorer that appeared to recently have been in an accident. He observed a mailbox and street signs that had been "run over," a telephone pole broken in half hanging by its wires, and tire tracks leading from the roadway into the grass where the vehicle was positioned. Officer Muller determined that the tire tracks were freshly-made. The Explorer was resting against a tree on the lawn of a residential property.
Officer Muller found defendant in the driver's seat of the vehicle, and detected the odor of alcohol on his breath. Defendant appeared disoriented and was unable to comply with Muller's request to provide identification. Muller asked him whether anybody else was in the vehicle, to which defendant answered in the negative. Muller never asked whether defendant was driving the vehicle when it crashed, nor did he inquire as to what had caused the accident. Muller called for assistance, and ten minutes later defendant was removed from the vehicle and transported to Cooper Hospital in Camden, and Muller followed in his vehicle. Upon arrival, Muller asked registered nurse Marico Deal to draw blood from defendant for testing. She did so, utilizing the blood alcohol kit provided by Muller. When Deal asked defendant to sign a document consenting to the extraction of his blood, he did not respond.
Muller observed Deal remove a non-alcohol swab from the blood test kit and use the swab to prepare defendant's right arm for the drawing of blood. He watched as she filled the two vials that would ultimately *1084 be tested. She used the gray tops contained with the kit to close the vials, and handed both of them to Muller after writing defendant's name on the adhesive labels. Muller placed them into the box provided with the kit, attached "integrity seals" to the outside, and affixed his initials.
Before Muller left Cooper Hospital, Deal provided him with a document entitled "Uniform Certification for Bodily Specimens Taken in a Medically Acceptable Manner," pursuant to N.J.S.A. 2A:62A-10, 11.
Upon returning to police headquarters, Muller placed the sealed box containing the vials of defendant's blood inside a refrigerator outfitted with specially-designed locked boxes. He removed the key, depositing it through a hole accessible only by the on-duty detective.
The morning after the blood was drawn, Detective Crescitelli removed the blood sample from the secured refrigerated locker and transported it to the New Jersey State Police lab where he turned it over to a lab technician. During the thirty-four minute ride from police headquarters to the State Police laboratory in Hammonton, the blood sample remained on the seat of the car next to Crescitelli.
Michelle Adamson, a chemist employed by the State Police laboratory in Hammonton, testified that she tested defendant's blood sample using the head space gas chromatography test. After retrieving the sample from the vault, Adamson took it to the toxicology unit and affixed bar-coded labels to the tubes. Applying the procedures that she was trained to use after having been certified as an expert in head space gas chromatography testing, Adamson tested two samples of defendant's blood. She testified that she followed the standard procedure of adding a specified and known concentration of n-propenyl to the blood sample. She explained that the machine then calculates a peak for both the ethanol in the blood and the additive n-propenyl and determines the ratio of the area of the ethanol compared to the area occupied by the n-propenyl standard. That computation results in a peak area ratio. It is the peak area ratio that is then used to determine the quantity of alcohol in the blood. Using those procedures, Adamson testified that defendant's blood alcohol content (BAC) was 0.1416 on vial A and 0.1403 on vial B.
The defense called Gary L. Lage as an expert in toxicology and pharmacology with specific stipulated expertise in blood testing. He explained that any number of possible errors in the blood extraction procedures could have improperly increased defendant's BAC. He pointed to the possibility that Deal had used an ethanol swab rather than a betadine swab, thereby creating a false positive reading for the presence of alcohol in defendant's blood; had drawn blood from an artery rather than a vein; and had failed to properly shake the vials prior to testing, interfering with the even distribution of the preservative throughout the blood, thereby permitting micro organisms as well as yeast to falsely convert glucose to alcohol. Lage further testified that blood loss, as well as the administering of intravenous fluids, could also have improperly inflated the BAC. In sum, Lage concluded that "you can't state with any degree of certainty that the blood alcohol results are valid." The defense then rested.

II.
We begin by addressing defendant's argument, raised below, that admission of the Uniform Certification for Bodily Specimens Taken in a Medically Acceptable Manner, without the testimony of its preparer, *1085 violated his constitutional right of confrontation because he was denied the opportunity to cross-examine the nurse who drew his blood and prepared the certification. In particular, defendant argues that without the opportunity to cross-examine Deal, he was deprived of his ability to explore critical areas of potential contamination of the extracted blood samples. Although defendant concedes that Deal drew the blood in the presence of Officer Muller, he argues, correctly, that Muller could not say if the nurse had extracted the blood in a medically accepted manner, abided by the hospital policies for its extraction, took venous or arterial blood, or used an ethanol-based swab on the extraction site. Defendant points to the testimony of Lage, who explained that contamination of the extracted blood would have caused a false blood alcohol concentration reading.
In the municipal court, and again in the Law Division during the trial de novo, defendant argued that Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) precludes the State from relying on the contents of the certificate in the absence of testimony from its preparer. In Crawford, the United States Supreme Court determined that when "testimonial evidence" is at issue, dispensing with confrontation solely because testimony is deemed reliable is violative of the Sixth Amendment to the United States Constitution.[4]Id. at 68-69, 124 S.Ct. at 1374, 158 L.Ed.2d at 203. Before us, defendant again pressed his argument regarding Crawford. He also pointed to our recent decision in State v. Berezansky, 386 N.J.Super. 84, 899 A.2d 306 (App.Div. 2006) as further support for his constitutional claims.[5] In Berezansky, we held that neither the business record exception nor the government record exception to the hearsay rule set forth in N.J.R.E. 803(c)(6) and 803(c)(8), respectively, authorize the admission of the report on blood alcohol content in a DWI prosecution in the absence of the testimony of the technician who prepared that report. Id. at 94, 899 A.2d 306. We further held that the lack of an opportunity by a defendant to cross-examine the technician violated defendant's rights under both the Sixth Amendment and article I, paragraph 10 of the N.J. Constitution. Ibid.
In reply to defendant's arguments about Berezansky, the State makes several points. The State argues first that, here, unlike in Berezansky, the admission of the certification in the absence of its preparer is specifically authorized by the statute. N.J.S.A. 2A:62A-11 provides:
Any person taking a specimen pursuant to section 1 of [N.J.S.A. 2A:62A-10] shall, upon request, furnish to any law enforcement agency a certificate stating that the specimen was taken pursuant to section 1 of this act and in a medically acceptable manner. The certificate shall be signed under oath before a notary public or other person empowered to take oaths and shall be admissible in any proceeding as evidence of the statements contained therein.
Next, the State argues that defendant's argument should be rejected because it "ignores the pragmatic approach historically adopted by New Jersey courts on issues of this type." The State points to *1086 the statute as a likely response to the "difficulties experienced by municipal prosecutors in securing the appearance of [nursing] personnel at DWI trials and the concomitant strain these court appearances placed upon the affected medical professions." State v. De Frank, 362 N.J.Super. 1, 6, 826 A.2d 773 (App.Div. 2003). The State's third argument is that defendant did have available to him avenues for impeachment as he was afforded the opportunity to cross-examine Muller on the observations he made of the blood draw by Deal. Fourth, the State argues that Berezansky should be distinguished because the omission of the testimony of a chemist who certifies that the BAC exceeds the legal limit "cannot be compared to the omission of the testimony of a minimally involved witness [nurse Deal] in the chain of custody." We disagree.
That the challenged practice is authorized by N.J.S.A. 2A:62A-11 does not establish that the practice itself is lawful in all circumstances. That argument fails in light of our reasoning in Berezansky. In Berezansky, supra, 386 N.J.Super. 84, 899 A.2d 306, we relied not only on Crawford, supra, but also on the New Jersey Supreme Court's decision in State v. Simbara, 175 N.J. 37, 811 A.2d 448 (2002). Simbara concerned a challenge to the admissibility of a certificate reporting the result of testing for a controlled dangerous substance. Id. at 40, 811 A.2d 448. The Court in Simbara addressed the statute that authorized the admission of that certificate, which was N.J.S.A. 2C:35-19.[6] The Court held that the certificate could not be admitted into evidence in the absence of the technician who prepared it once the defendant has asserted his right to require the technician's testimony and availability for cross-examination. Id. at 49, 811 A.2d 448. There, the Court rejected the State's argument that the certificate was reliable because the laboratory complied with N.J.S.A. 2C:35-19. Id. at 46, 811 A.2d 448. The Court held that the defendant's right of confrontation was violated by the admission of the laboratory certificate, which clearly was hearsay, regardless of whether its preparer had complied with the statute or not. Id. at 47-49, 811 A.2d 448.
Thus, in Berezansky, while discussing Simbara, we noted the Court's rejection of the argument that a technician's compliance with the procedures of N.J.S.A. 2C:35-19 was a justification for dispensing with the right of confrontation. Berezansky, supra, 386 N.J.Super. at 93, 899 A.2d 306. This is the identical argument the State makes here. Indeed, as we noted in Berezansky, after a defendant objects to admission of a laboratory certificate, "the statute vanishes as a determinative to [and *1087 justification for] admissibility in evidence of the laboratory certificate." Ibid.
In Berezansky, we did not discuss at length whether the testimony of the technician who prepared the BAC report was "testimonial" in nature. In Crawford, supra, the Court's express holding applied only to "testimonial" evidence:
Where non-testimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial."
[541 U.S. at 68, 124 S.Ct. at 1374, 158 L.Ed.2d at 203 (footnote omitted).]
In Berezansky we observed, "We need not fill in the definition left open by the Supreme Court to be guided by the Court's concerns for the right of confrontation as expressed in Crawford." 386 N.J.Super. at 91, 899 A.2d 306. After Crawford and Berezansky were decided, the United States Supreme Court in Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), as well as another panel of this court in State v. Buda, 389 N.J.Super. 241, 912 A.2d 735 (App.Div.2006), have identified specific instances where evidence was deemed to be testimonial. For purposes of confrontation clause analysis, relying on Davis, we held in Buda, in the context of a statement given to a DYFS worker, that the statement was testimonial because the ongoing police emergency had ended and the primary purpose of the statement was to establish or prove past events potentially relevant to later criminal prosecution. Buda, 389 N.J.Super. 241, 248-49, 912 A.2d 735. Here, we have no difficulty in finding the certification to be testimonial. If a statement of a child about his injuries is deemed testimonial when the immediate emergency has passed, then certainly a certification prepared for purposes of trial, and indeed only for purposes of trial, can be nothing other than testimonial.
We are mindful of the decisions of other courts that have had occasion to address the issue of whether certain records would be considered testimonial for purposes of analysis under Crawford and its progeny. In United States v. Ellis, 460 F.3d 920, 923 (7th Cir.2006), the Seventh Circuit addressed the admissibility of medical records establishing the presence of a controlled dangerous substance in the defendant's blood and urine. There, the Court held that because the statements of medical personnel "were made in the ordinary course of business, [they] are statements that by their nature were not testimonial" and their admission, therefore, does not violate the Sixth Amendment. Id. at 927.[7]
*1088 In the instant case, the preparation of the Uniform Certification for Bodily Specimens Taken in a Medically Acceptable Manner could not qualify for admission under the business record exception to the hearsay rule, N.J.R.E. 803(c)(6), because it was not prepared in the ordinary course of business. Instead, the certification was prepared solely to be used "in any proceeding as evidence of the statements contained" within such record. N.J.S.A. 2A:62A-11. As we observed in Berezansky, supra, the business records exception will not apply if the document was prepared specifically for the purposes of litigation. 386 N.J.Super. at 94, 899 A.2d 306.
Having found that the certification is testimonial in nature, and in light of our conclusions about what Berezansky and Simbara require, we see no principled basis to afford a defendant challenging the admissibility of a certification concerning the procedures used to draw his blood any fewer rights than a defendant challenging a technician's report on blood alcohol content or a report on the presence of a controlled dangerous substance. N.J.S.A. 2A:62A-11, the statute at issue here, is thus free of any constitutional difficulties only in those circumstances when a defendant consents to the admission of the nurse's certificate and agrees to waive the opportunity for cross-examination; however, when an objection is raised, the existence of the statute is not a justification for the State's failure to produce the witness. Ibid.
The State's argument that N.J.S.A. 2A:62A-11 should not be construed to require the State to produce the nurse who drew the blood because of the pragmatic considerations involved in securing such appearance at a trial a considerable distance away cannot be squared with the constitutional mandate of either Crawford or Berezansky and must therefore be rejected. Unquestionably, those decisions compel the conclusion that practical considerations must yield to constitutional imperatives when the two collide.
We likewise reject the State's contention that defendant's cross-examination of Muller was a sufficient alternative to cross-examination of Deal because, as the State itself concedes, there were several gaps in what Muller had observed. Nor are we persuaded by the State's characterization of Deal as a "minimally involved witness in the chain of custody." Lage's expert testimony about the impact of contamination of blood on the reliability of the BAC reading persuades us otherwise.
Lage testified that an error by Deal in using an ethanol, rather than a betadine swab, or in the drawing of blood from an artery rather than a vein, or in the failure to have shaken the vials prior to testing could have falsely and unfairly inflated the BAC reading. In light of that testimony, the State's characterization severely understates her potentially pivotal role in maintaining the purity of the sample and ultimately guaranteeing the reliability of the BAC result itself. Thus, the State's effort to equate the role of a nurse who draws the blood to a minimally involved witness in the chain of custody must fail. For example, a desk clerk at a laboratory, who assigns an identifying number to a specimen and puts it in a secure area pending forensic analysis, is a "minimally involved witness in the chain of custody." Comparing such a task to that of a person who procures the specimen and protects it from contaminating influences is, in our view, erroneous.
*1089 Accordingly, in light of Crawford, Berezansky and Buda, the decision by the court below dispensing with the opportunity for cross-examination of the nurse who drew defendant's blood cannot be countenanced. We therefore hold that the admission in evidence of the Uniform Certification for Bodily Specimens Taken in a Medically Acceptable Manner, without the opportunity for cross-examination, over the objection of defendant, runs afoul of the right of confrontation protected both by the United States and the New Jersey Constitutions.[8]
We now address defendant's remaining arguments. As to Point I, the Law Division judge rejected defendant's claim that the seizure of defendant's blood without a warrant was unsupported by probable cause. The judge found that the evidence supported a conclusion that defendant was the driver of the vehicle and that he drove while intoxicated. The judge therefore rejected the claim that the seizure of defendant's blood violated defendant's right to be free from unlawful search and seizure under the Fourth Amendment to the United States Constitution. Unquestionably, the fresh tire tracks leading from the roadway to defendant's car, the smell of alcohol on defendant's breath, defendant's statement that no one else was then in the car, his disorientation and the crash itself, provided ample evidentiary support for the judge's conclusions. The judge found no evidence of a phantom driver operating defendant's vehicle who miraculously escaped injury and ran out of the vehicle before Muller arrived on the scene. We agree with that finding. Further, we concur in his conclusion that sufficient probable cause existed to conclude that defendant was driving while intoxicated, thereby justifying the drawing of defendant's blood. See State v. Ravotto, 169 N.J. 227, 252, 777 A.2d 301 (2001) (finding that probable cause was satisfied by proof of a strong odor of alcohol on the breath of a driver whose car had careened off the road and hit a tree).
We likewise reject defendant's claim under Point II that the taking of his blood over his objection violated his rights under the Fourth Amendment. Here, unlike in Ravotto, defendant never expressly refused to give a blood sample, did not manifest a fear of needles, did not express a willingness to instead take a breathalyzer test, and had no "violent reaction to the bodily intrusion engendered by the search . . . ." Id. at 242, 777 A.2d 301. Also, unlike the defendant in Ravotto, who belligerently and violently resisted the blood draw, defendant here, when asked whether he agreed to have his blood drawn, failed to answer and appeared to be drifting "in and out of consciousness." The issue of excessive force, which was the doctrinal underpinning of Ravotto, id. at 241, 777 A.2d 301, is entirely absent here, and accordingly no constitutional violation occurred.
Our conclusion that the conviction must be reversed and the matter remanded for a new trial makes unnecessary any consideration of Points IV, V, and VI.
Reversed and remanded for a new trial.
NOTES
[1] Judge Cuff did not participate at oral argument but with the consent of the parties, she has participated in the disposition of this appeal.
[2] In the municipal court, the defendant had also been convicted of violating N.J.S.A. 39:4-96, reckless driving. At the trial de novo, he was found not guilty of that charge.
[3] The Law Division sentenced defendant to a total of thirty days community service, forty-eight hours in the Intoxicated Driver Resource Center, and a two year suspension of driving privileges.
[4] A DWI charge is a quasi-criminal offense entitling a defendant to the protection of the confrontation clause. See State v. Widmaier, 157 N.J. 475, 494-96, 724 A.2d 241 (1999); Berezansky, 386 N.J.Super. at 90 n. 4, 899 A.2d 306 (App.Div.2006).
[5] Berezansky was decided after the trial de novo in the Law Division and after briefs were submitted on appeal. After argument, we invited and received supplemental briefs.
[6] N.J.S.A. 2C:35-19 provides, in pertinent part:

b. Upon the request of any law enforcement agency, the laboratory employee performing the analysis shall prepare a certificate. This employee shall sign the certificate under oath and shall include in the certificate an attestation as to the result of the analysis. The presentation of this certificate to a court by any party to a proceeding shall be evidence that all of the requirements and provisions of this section have been complied with. This certificate . . . shall contain a statement establishing the following: the type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; and the nature and condition of the equipment used. When properly executed, the certificate shall . . . notwithstanding any other provision of law, be admissible evidence of the composition, quality, and quantity of the substance submitted to the laboratory for analysis, and the court shall take judicial notice of the signature of the person performing the analysis and of the fact that he is that person.
[7] Four state courts and one other federal court have addressed the same or a similar issue. In United States v. Feliz, 467 F.3d 227, supplemental opinion at 2006 WL 3044420, 2006 U.S.App. Lexis 26826 (2d Cir.2006) and State v. Craig, 110 Ohio St.3d 306, 853 N.E.2d 621, stay granted, 111 Ohio St.3d 1421, 855 N.E.2d 88 (Ohio 2006), both courts held that an autopsy report was a non-testimonial business record, and therefore its admission was not in violation of the command of the Sixth Amendment. In State v. Fischer, 272 Neb. 963, 726 N.W.2d 176 (2007); Jarrell v. State, 852 N.E.2d 1022 (Ind.Ct.App.2006) and Neal v. State, 281 Ga.App. 261, 635 S.E.2d 864 (2006), each court determined that a breathalyzer inspection certificate was likewise not testimonial, and held that the admission of such form was also not in violation of the Sixth Amendment. Each of the preceding cases involved different types of reports than we are concerned with here. Thus, we do not address their holdings.
[8] We are mindful of the opinion in State v. Godshalk, 381 N.J.Super. 326, 885 A.2d 969 (Law Div.2005), which held that admitting breathalyzer inspection certificates in evidence, without the testimony of the officer who performed the inspection, was permissible under the business record or official record exceptions to the hearsay rule, N.J.R.E. 803(c)(6) and (c)(8), and that so doing did not violate the confrontation clause. Godshalk dealt with a different type of test than we are concerned with here, thus, we do not address its holding and express no view as to its continued viability.