**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0490-17T3

MARGARITA SORIANO,
Individually and as Administratrix
Ad Prosequendum of the ESTATE
OF GUMERCINDO SORIANO,

      Plaintiff-Appellant,

v.

70 HUDSON STREET REALTY, LLC,
DF 70 REALTY, LLC, MF 70
REALTY, LLC, LJC 70 REALTY, LLC,
HAZEL ROCK, INC., and HOUSTON
SPECIALTY INSURANCE COMPANY,

      Defendants-Respondents.

_____

Argued January 29, 2019 – Decided February 27, 2019

Before Judges Hoffman, Suter and Firko.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3086-15.

Richard M. Chisholm argued the cause for appellant.

Amy K. Papa argued the cause for respondent 70 Hudson Street Realty, LLC (Bolan Jahnsen Dacey, attorneys; Terrence J. Bolan, on the brief).

Paul J. Soderman argued the cause for respondents DF 70 Realty, LLC, MF 70 Realty, LLC, and LJC 70 Realty, LLC.

Vincent J. La Paglia argued the cause for respondent Hazel Rock, Inc. (Vincent La Paglia, attorney; Jeff E. Thakker, of counsel; Vincent J. La Paglia, on the brief).

Daniel A. Schilling argued the cause for respondent Houston Specialty Insurance Company (Kaufman Borgeest & Ryan, LLP, attorneys; Brian M. Sher, Elizabeth Butler and Daniel A. Schilling, on the brief).

PER CURIAM

Plaintiff, the widow of Gumercindo Soriano (decedent), appeals from Law Division orders granting the summary judgment dismissal of her wrongful death action and related claims, arising from the fatal injuries her husband sustained in a work-related accident. We affirm in part, and reverse and remand in part.

I

We derive the following facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff, the non-moving party. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

In August 2012, decedent – then fifty-nine years old – began working as a cook at The Green Rock Tap & Grill (the restaurant), a bar-restaurant operated by defendant Hazel Rock, Inc. (Hazel Rock). Hazel Rock leased the property from defendant 70 Hudson Street Realty, LLC (Hudson).[1]

On August 4, 2013, decedent's co-worker found him unconscious in the basement of the restaurant, at the bottom of a rudimentary hatch ladder system extending down from the restaurant; two days later, decedent died at a local hospital without regaining consciousness. Plaintiff contends decedent sustained fatal head injuries when he either slipped or fell down the unsafe, illegally installed hatch ladder system.

A hospital laboratory report after decedent's admission listed his blood alcohol concentration (BAC) as 0.228.[2] Despite this BAC reading, the record

---

[1] Defendants DF 70 Realty, LLC; MF 70 Realty, LLC; and LJC 70 Realty, LLC own Hudson. The record indicates the principal owners of these entities are Mario Fini, a battalion chief with the Hoboken Fire Department, and Patrick Cappiello, a retired captain with the same department.

[2] Notably, at oral argument, counsel advised that the deposition of the nurse who completed the blood draw had not been taken. In State v. Renshaw, we noted the importance of the testimony of the nurse who completes the blood draw to confirm that proper steps were followed. 390 N.J. Super. 456, 468 (App. Div. 2007). For instance, "an error . . . in using an ethanol, rather than a betadine swab, or in the drawing of blood from an artery rather than a vein . . . could . . . falsely and unfairly [inflate] the BAC reading." Ibid.

contains no observations of impairment of decedent before he was found unconscious in the basement. Dan Grey, a restaurant manager and the last person to see decedent alive, testified that decedent appeared fine and not impaired approximately one hour before he was found. Another co-worker, Daniel Ordone, saw decedent thirty minutes earlier and decedent also appeared fine to him.

At the time of decedent's fatal accident, restaurant employees had two ways to access the basement of the restaurant. From an outside door on the street, they could use stairs leading down to the basement. Alternatively, they could use the hatch ladder system, consisting of a hole in the floor of a locked storage room. A square, wooden hatch door covered the hole; when lifted, the hatch door revealed a four foot, five inch mounted ladder, leading down to a small platform, and then an unmounted aluminum ladder[3] extending another five feet, eight and one-half inches down from the platform to the cement floor of the basement. Thus, the total distance from the trap door opening to the cement basement floor exceeds ten feet.

---

[3] A "bungee cord" held the aluminum ladder in place.

A-0490-17T3

Although federal law required Hazel Rock to report decedent's accident to the Occupational Safety and Health Administration (OSHA),[4] Hazel Rock never reported the accident or the fatality.  As a result of Hazel Rock's failure to comply with its OSHA reporting obligation, OSHA did not have the opportunity to investigate the accident and issue citations for the accident.[5]  When OSHA ultimately learned of decedent's fatal accident twenty-one months later, OSHA officials made the decision "to investigate the establishment given that hazards which may have contributed to an incident could still be present at the site."  In fact, the hazards did remain as the record indicates the hatch ladder system underwent no significant change in the interim.

An OSHA compliance safety and health officer (CSHO) conducted an investigation of the restaurant premises on May 12, 2015.  The CSHO found five "serious" violations regarding the hatch ladder system.  Three of those violations

---

[4]  Applicable regulations require "all employers" to contact OSHA and report "the in-patient hospitalization" of an employee within twenty-four hours of a work-related incident, and to report "the death of any employee as a result of a work-related incident" within eight hours. 29 C.F.R. § 1904.39 (a) (1) and (2).

[5]  29 U.S.C. § 658(c) specifically provides, "No citation may be issued under this section after the expiration of six months following the occurrence of any violation."

A-0490-17T3

listed "Death" as the possible "Injury/Illness (and Justification for Severity and Probability)."

According to the OSHA violation worksheet following inspection of the hatch ladder system,

> Employees were exposed to falls of up to [ten] feet[6] to the basement below as the trapdoor floor opening was secured in the open position. . . .
>
> The entrance to the area of the trapdoor was a hinged door which employees had to key in a code to open. Once open, the trapdoor opening was directly in front of the worker and storage items such as towels and bleach used in the restaurant were stored on shelves around the opening. Thus opening the door was like going into a closet without the floor[,] given the trapdoor was always open.
>
> One could be standing by the open door in front of the trapdoor and when the kitchen doors open, it could strike a worker and send them down the opening in the floor.
>
> [Pa22]

According to Dr. David Gushue, plaintiff's biomechanical expert, decedent's fatal head injuries "consisted of a severe comminuted fracture involving the left frontal, perietal, and occipital bones with associated severe intracranial injuries and

---

[6] An OSHA worksheet listed the exact measurement of "the distance from the trap door opening to the basement floor as [ten] feet, [two] inches."

A-0490-17T3

hemorrhage."  He concluded that decedent "fell from an elevated position on the ladder(s) and/or platform and sustained multiple high-energy impacts during the fall sequence that resulted in injuries to the left frontal aspect of his skull. . . ."

Michael Gallucci, one of the owners of Hazel Rock, testified that employees typically used the hatch ladder system to access the basement because it was faster. The basement contained Gallucci's office, a walk-in refrigerator, three ice machines, and storage of beer, wine, and liquor.  Barbacks[7] went down to the basement most often to retrieve ice or other items for the bar.  The cooks only used the basement to meet with Gallucci.

Hudson acquired the building that includes the restaurant leased to Hazel Rock in 2003.  When Hudson acquired the building, Hazel Rock was already a tenant, renting just one floor for its restaurant.  In July 2004, Hazel Rock contacted Hudson, expressing interest in leasing the basement area below its restaurant space. While the record contains three letters exchanged on this issue, the record inexplicably fails to contain any letters or emails confirming the agreement reached between Hudson and Hazel Rock regarding the lease of the basement, nor any addendum or amended lease addressing this issue.

---

[7]  According to Hazel Rock, the term "barbacks" refers to bartenders' assistants.

A-0490-17T3

At some point during the latter half of 2004, Hazel Rock began leasing the basement below its restaurant. Because the only way to access the basement from the restaurant was through an outside door, Gallucci wanted to install the hatch ladder system at issue. According to Gallucci, when he informed Hudson regarding the proposed installation, Hudson told him they had "permits out on the building," since "they were doing a lot of work on the building." As a result, Gallucci did not obtain a construction permit for the hatch ladder work since Hudson told him no permit was necessary. While Gallucci claimed he hired a contractor to install the hatch ladder system, he could not recall the name of the contractor. Regardless, the record clearly shows that Hazel Rock installed the hatch ladder system without a construction permit, without design plans, and without any inspections by any construction code officials.

According to Gallucci, Fini and Capiello were both aware of the hatch ladder system. In contrast, Fini and Capiello both deny knowledge of any Hudson representative granting permission for Hazel Rock to install the hatch ladder system or seeing it in place before decedent's accident. Nevertheless, Capiello admitted he was present in the basement "when [Gallucci] took the space," referring to the final negotiation which expanded the leased premises to include the basement. Of note,

it appears from the record that, at all relevant times, Hudson had its offices on the seventh floor of the same building as the restaurant.

A May 19, 2010 lease[8] between Hudson and Hazel Rock included a "BUILD-OUT ADDENDUM," which placed strict conditions on all "tenant improvements or alterations." In the addendum, Hudson required Hazel Rock to "comply with all of the laws, orders, rules, and regulations of all governmental authorities" and to procure all required "governmental permits and authorizations." The addendum further required Hazel Rock to submit to Hudson "all plans and specifications" for "prior written approval" before commencing any work. The addendum also obligated Hazel Rock to use only "fully licensed and insured contractors."

Shortly after decedent's accident, plaintiff filed a workers' compensation claim. In its answer, Hazel Rock admitted decedent was employed "on date alleged in petition," but denied the accident "[a]rose out of and in the course of employment." Hazel Rock and plaintiff eventually reached a $60,000 Section

---

[8]  The record does not contain a copy of the lease that would have been in effect when Hudson allegedly gave Hazel Rock permission to install the hatch ladder system and advised that no building permit was required. It appears the trial court and the parties assumed the lease in effect in 2004 had the same terms as the May 19, 2010 lease.

20[9] settlement. The settlement order states it is "pursuant to N.J.S.A. 34:15-20[,] which has the effect of a dismissal with prejudice, being final as to all rights and benefits of the petitioner and is a complete and absolute surrender and release of all rights arising out of this/these claim petition(s)."

On July 22, 2015, plaintiff filed a complaint against Hudson. Plaintiff later amended her complaint to add claims against Hazel Rock and defendant Houston Specialty Insurance Company (Houston Specialty), Hazel Rock's insurer.

In July 2017, each defendant filed a motion for summary judgment. Following oral argument, the trial court delivered an oral opinion, addressing the motion of each defendant in turn.

Regarding Hazel Rock, the trial court first found decedent was a Hazel Rock employee. The court then noted plaintiff's failure to cite any authority to support the argument that the Section 20 settlement should not bar plaintiff's tort action against Hazel Rock. The court proceeded to make other findings, apparently on an alternative basis, in the event the Section 20 settlement did not serve to bar plaintiff's claim against Hazel Rock. The court then found "no evidence in the motion

---

[9] N.J.S.A. 34:15-20.

A-0490-17T3

record . . . that would place Hazel Rock on notice that there was virtual certainty of injury or death that would result from the use of a ladder access." The court also found no evidence Hazel Rock knew of a danger to decedent and intentionally disregarded that danger, and no evidence of any other injuries occurring near the hatch ladder system. The court rejected as "speculation" plaintiff's argument that a known hazard in the hatch ladder system caused decedent's accident, concluding, "The record is completely devoid of any evidence that it did create a danger."

Regarding Hudson, the trial court found there was a "triple net lease that places the responsibility for maintenance and repairs upon the tenant." The court also found Hazel Rock constructed the hatch ladder system without the approval of Hudson. Ultimately, the court found Hudson had no "actual knowledge" of a "hazard" that "caused the accident."

Regarding Hazel Rock's insurer, the trial court granted summary judgment because it found "the insurance policy. . . was not intended to provide a benefit to [decedent]." The court further concluded any damages from decedent's accident would have been excluded under the policy in any event, under three different exclusions. First, the trial court found the employer's liability exclusion applied. Second, the trial court found the workers' compensation

11

exclusion applied. Third, the trial court found the expected or intended injury exclusion applied.

The trial court then entered orders dismissing all counts of plaintiff's complaint. This appeal followed.

II

In reviewing a grant of summary judgment we "'employ the same standard . . . that governs the trial court.'" W.J.A. v. D.A., 210 N.J. 229, 237 (2012) (quoting Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010)). We first determine whether the moving party demonstrated there were no genuine disputes as to material facts. Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J. Super. 224, 230 (App. Div. 2006). A determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. Brill, 142 N.J. at 540. We then decide "whether the motion judge's application of the law was correct." Atl. Mut. Ins. Co., 387 N.J. Super. at 231. In this regard, our review is plenary, owing no deference to the judge's legal conclusions. Manalapan Realty, L.P. v. Manalapan Twp. Comm.,

140 N.J. 366, 378 (1995). "The interpretation of contracts and their construction are matters of law for the court subject to de novo review." Sealed Air Corp. v. Royal Indem. Co., 404 N.J. Super. 363, 375 (App. Div. 2008) (citing Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998)). We apply basic principles of contract interpretation to a lease. Town of Kearny v. Disc. City of Old Bridge, Inc., 205 N.J. 386, 411 (2011).

When viewed in the light most favorable to plaintiff, the relevant facts do not warrant the entry of summary judgment in favor of Hudson; however, the record does support the summary judgment dismissal of plaintiff's complaint against Hazel Rock and Houston Specialty. We address the claims against defendants in turn.

## A.  Hazel Rock

Plaintiff argues the workers' compensation settlement was essentially a dismissal and therefore does not bar an action at law, at least for an intentional tort claim. We disagree and affirm the trial court's conclusion that the Section 20 settlement here bars plaintiff's claim against Hazel Rock.

Workers' compensation laws "provide an expeditious and certain remedy for employees who sustain work injuries by the statutory imposition of absolute but limited and determinate liability upon the employer." Wilson v. Faull, 27 N.J. 105,

13

116 (1958) (citing Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469 (1947)). The statutory scheme represents a compromise whereby "[t]he employee surrenders his right to seek damages in an action at law in return for swift recovery independent of proof of fault." Ibid. Pursuant to N.J.S.A. 34:15-8:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

While the statute grants absolute immunity to employers from common law negligence suits by employees, Cellucci v. Bronstein, 277 N.J. Super. 506, 518 (App. Div. 1994), it does not preclude an action based on intentional wrongful conduct.

While plaintiff's Law Division complaint alleged intentional wrongful conduct against Hazel Rock, in October 2016 plaintiff and Hazel Rock entered into a Section 20 settlement pursuant to N.J.S.A. 34:15-20, which provides, in relevant part:

> [A] judge of compensation may with the consent of the parties, after considering the testimony of the petitioner and other witnesses, together with any stipulation of the parties, and after such judge of compensation has determined that such settlement is fair and just under all the circumstances, enter "an order approving settlement." Such settlement, when so approved, notwithstanding any other provisions of this chapter,

14

shall have the force and effect of a dismissal of the claim petition and shall be final and conclusive upon the employee and the employee's dependents, and shall be a complete surrender of any right to compensation or other benefits arising out of such claim under the statute.

"Receipt of a lump sum settlement under N.J.S.A. 34:15-20 constitutes an implied acknowledgment that the claimant's disability was work-related and compensable under the Workers' Compensation Act." Sperling v. Bd. of Review, 301 N.J. Super. 1, 5 (App. Div. 1997). In Hawksby v. DePietro, 165 N.J. 58, 66 (2000), our Supreme Court held that a Section 20 settlement barred a subsequent medical malpractice claim against a co-employee doctor. The Court reasoned it would be unfair to hold the employer liable for both common law damages and workers' compensation liability. Id. at 66-67. A Section 20 settlement "is designed to achieve a complete settlement of all issues for all of the parties concerned." Univ. of Mass. Mem'l Med. Ctr., Inc. v. Christodoulou, 360 N.J. Super. 313, 320 (App. Div. 2003), rev'd on other grounds, 180 N.J. 334, 349 (2004). We are satisfied that the trial court correctly determined that plaintiff's Section 20 settlement bars plaintiff from seeking damages from Hazel Rock in an action at law.

## B. Houston Specialty Insurance Company

The trial court granted summary judgment to the insurer because it found "the insurance policy . . . was not intended to provide a benefit to [decedent]." We agree.

15

"[I]t is well recognized that an injured person possesses no direct cause of action against the insurer of the tortfeasor prior to recovery of judgment against the latter." President v. Jenkins, 357 N.J. Super. 288, 312 (App. Div. 2003), rev'd in part on other grounds, 180 N.J. 550 (2004); see also Cruz-Mendez v. ISU/Ins. Servs., 156 N.J. 556, 566-67 (1999) ("Generally, plaintiffs in tort actions may not directly sue insurers.").

Plaintiff argues the trial court was precluded from granting summary judgment on standing grounds because the court already rejected that argument on a motion to dismiss. This argument lacks merit. As the trial court explained, a motion to dismiss requires a more stringent standard than a summary judgment motion, and the court decided the motion to dismiss before discovery was complete. Thus, the rejection of the standing argument on Houston Specialty's motion to dismiss did not preclude it from again raising the issue of standing in support of its summary judgment motion. Here, plaintiff did not recover a judgment against Hazel Rock; therefore, we agree plaintiff lacks standing to bring a claim against Hazel Rock's insurer.

The trial court further concluded any damages from decedent's accident would have been excluded under the policy anyway under three different exclusions. Interpretation of an insurance contract is generally a matter of law subject to de novo

16

review.  Sealed Air Corp., 404 N.J. Super. at 375.  "An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled."  Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960); Scarfi v. Aetna Cas. & Sur. Co., 233 N.J. Super. 509, 514 (App. Div. 1989)).  Exclusions are generally narrowly construed, and the burden is on the insurer to bring the claim within the exclusionary language.  Id. at 442.  Nevertheless, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'"  Id. at 441 (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)).

The trial court first found the employer's liability exclusion applied.  The policy excludes "'[b]odily injury' to . . . [a]n 'employee' of the insured arising out of and in the course of . . . [e]mployment by the insured; or . . . [p]erforming duties related to the conduct of the insured's business . . . ."  Decedent worked for Hazel Rock at the restaurant as a cook for approximately one year before the accident. Two of decedent's co-workers testified that decedent was working at the time of the accident.  Furthermore, a co-worker found decedent in the basement, an area restricted to employees only.  Because both Hazel Rock and plaintiff agree decedent was an employee of Hazel Rock and the record clearly shows decedent was working

17

at the time of the accident, we affirm the trial court's finding that the employer's liability exclusion applies.

Plaintiff further argues the insurer is precluded under judicial estoppel from arguing the decedent was injured in the course of employment because Hazel Rock argued the opposite during the workers' compensation proceeding. We disagree judicial estoppel applies here since Hazel Rock did not successfully maintain that argument. Accordingly, we reject plaintiff's argument that judicial estoppel prevents Hazel Rock or its insurer from arguing decedent was in the course of employment at the time of his accident. In light of our affirmance of the trial court's conclusion that the employer's liability exclusion applied, we need not address the additional exclusions cited by the court as providing alternative bases for granting summary judgment to Houston Specialty.

## C. Hudson

As previously noted, the record does not contain a copy of the lease that was in effect in 2004 when Hazel Rock installed the hatch ladder system at issue in this case. Since we acknowledge the possibility that the lease in effect in 2004 contained the identical material terms as the 2010, we will address the issues presented on this assumption. Nevertheless, if the 2004 lease should

A-0490-17T3

surface on remand, the court should address the issues presented by the installation of the hatch ladder system under that lease.

We recognize that, as a general proposition, "'there is no landlord liability' for personal injuries suffered by a commercial tenant's employee on the leased premises 'due to a lack of proper maintenance or repair, when the lease unquestionably places responsibility for such maintenance or repair solely upon the tenant.'" Geringer v. Hartz Mountain Dev. Corp., 388 N.J. Super. 392, 401 (App. Div. 2006) (quoting McBride v. Port Auth. of N.Y. and N.J., 295 N.J. Super. 521, 522 (App. Div. 1996)).

In Geringer, an employee of the tenant was injured after falling on an interior stairway within an office building. 388 N.J. Super. at 394. The tenant leased the entire seventh floor of the building via a "triple net" lease, which delegated the duty of maintenance and repairs to the tenant. Id. at 400. We found the property owner had no duty to maintain or repair the stairway. Id. at 402. We further found knowledge of a hazard is not sufficient to impose a duty upon the owner to repair. See Id. at 401 (declining to find "the deposition statements of [the] property manager . . . acknowledging hypothetically that he or she might alert [the tenant] upon noticing a loose handrail, a hole in the floor or some other similar problem

19

while walking through the seventh floor, as sufficient to confer an ongoing duty upon [the owner] to inspect, maintain or repair the stairway.").

However, we found the owner in Geringer did have a duty to design the stairway free of defects in the first place. Id. at 402. We found that because the owner reviewed construction plans, inspected during construction, and communicated with the tenant regarding construction, the owner owed "a duty of care in the design and construction of the stairway . . . ." Id. at 403. We therefore reversed summary judgment on the limited issue of whether the owner breached its duty of reasonable care in designing the stairway. Id. at 404-05.

Plaintiff argues the trial court erred in finding the owners had no actual knowledge of the hazard that caused decedent's accident, and therefore erred in granting summary judgment. In support of this argument, plaintiff cites Gallucci's deposition testimony that Hudson granted Hazel Rock permission to install the hatch ladder system at issue, and told Hazel Rock that construction could proceed without securing a building permit because they had "permits out on the building." As a result, Gallucci claims he understood that no permit was required and proceeded to install the hatch ladder system without a construction permit, without design plans, and without any inspections by any construction code officials. Gallucci further

testified that the owners of Hudson were aware of the hatch ladder system because "they've been down there."

From our review, the record does not support the trial court's finding that the owners had no actual knowledge of the hazard that caused decedent's accident. The court could only make this finding by accepting the deposition testimony of Hudson's principal owners as true and ignoring Gallucci's deposition testimony. Nor does the record support the trial court's finding that "[t]he record is completely devoid of any evidence" that the hatch ladder system created "a danger." To the contrary, the results of the OSHA investigation presented compelling evidence that the hatch ladder system created "a danger," considering the five "serious" violations of OSHA safety regulations identified, with three of the violations exposing workers to risk of death. In addition, photographs in the record provide strong support for the OSHA findings.

Plaintiff also argues the owners owe a duty to decedent under general negligence case law. Plaintiff states, "Whether a duty of care is owed in a case is truly a fact-sensitive decision that is ultimately a test of fairness," citing Weinberg v. Dinger, 106 N.J. 469, 485 (1987). Plaintiff argues the owners had a duty of care because of their actual knowledge of the existence of the unsafe hatch ladder system. In response, Hudson argue that Geringer clearly holds a

21

property owner has no duty to protect against hazards when the owner has no control over the premises. The trial court found no basis to impose liability on Hudson, citing the triple net lease and its finding that Hazel Rock constructed the hatch ladder system without the approval of Hudson.

As noted, the record reflects a clear dispute regarding Hudson's approval of the hatch ladder system and its alleged responsibility for the installation occurring without permits or inspections. We also part company with the trial court's finding that Hudson does not have any potential liability to plaintiff based upon its triple net lease agreement with Hazel Rock. Even if Hazel Rock installed the hatch ladder system, Hudson here remains potentially liable under their lease agreement.

As we recognized in Geringer, a triple net lease agreement does not relieve the landlord from liability when the provisions of the lease require the landlord's approval in the design and construction process. 388 N.J. Super. at 404-05. Summary judgment is not appropriate, and a trial is necessary where the record contains evidence the landlord "breached its duty to exercise reasonable care in assuring the safe design and construction of the stairway on which plaintiff suffered her injury." Ibid. Here, the record not only contains no evidence Hudson exercised reasonable care to assure the safe design and construction of

the hatch ladder system, the record contains evidence that Hudson directly facilitated the construction of the unsafe hatch ladder system. Specifically, according to Hazel Rock, Hudson advised they had a standing or open building permit, thus relieving Hazel Rock of its normal obligation to secure a construction permit.

Here, the lease agreement provides that any improvement by Hazel Rock must be performed by "fully licensed and insured contractors," after first submitting "all plans and specifications" for "prior written approval, and obtaining" all required "governmental permits and authorizations." In this regard, this case is similar to Geringer, where we held that "the surrounding circumstances suggest that [the landlord] kept its hand in the design and construction phase of the project, thereby providing it with both the 'opportunity and ability to exercise reasonable care' in how the stairway in question was built." Id. at 403 (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)).

Consequently, it is incumbent upon a factfinder at trial to determine whether Hudson was negligent in relation to the unsafe hatch ladder system, including whether it caused or shares in the responsibility for Hazel Rock's failure to obtain design plans, failure to secure a construction permit, and failure

23

to use a licensed contractor.  We further note that the hatch ladder system at issue here did not present a danger because of negligent maintenance or repair; instead, the record indicates an unsafe apparatus, which OSHA found lacked "standard railings" and other basic safety precautions.  The glaring deficiencies noted by OSHA indicate negligent design, not negligent maintenance or repair.

Affirmed in part, and reversed and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0490-17T3